F I L E D
Clerk
District Court
DEC 03 2019
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| DOUBLE A CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY BABAUTA and CLAUDIO K. NORITA,<br><br>Defendants. | Civil Case No. 1:19-00005<br><br>**DECISION AND ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

Defendants Anthony Babauta and Claudio K. Norita have each filed a motion for summary judgment (ECF Nos. 20, 22[1]) on the grounds of qualified immunity. Plaintiff Double A Corporation ("Double A") filed a single opposition to both motions (ECF No. 25), and Defendants filed a joint reply (ECF No. 26). The Court heard arguments on November 21, 2019 and now denies summary judgment for the reasons stated herein.

## I.   Background

The complaint, along with declarations attached to Double A's opposition, lays out the following narrative:[2] Double A is a construction contractor specializing in the installation of fire suppression systems. (Compl. ¶ 2, ECF No. 1.) Norita and Babauta are, respectively, Commissioner and Fire Inspector at the Commonwealth of the Northern Mariana Islands (CNMI)

---

[1] The first amended scheduling order set October 24, 2019 as the deadline for qualified immunity motions. (ECF No. 17 at 1.) Babauta initially filed a summary judgment motion (ECF No. 19) on that date. The next day, Babauta filed a notice of errata (ECF No. 21) and a second, superseding motion (ECF No. 22). Although filed one day after the deadline, Babauta's superseding motion merely corrects a few formatting errors and does not contain substantive changes. (ECF No. 21 at 2.) Accordingly, the Court accepts it as timely filed, replacing the previous version.

[2] Limited discovery has been conducted. (*See* Horey Decl., ECF No. 25-3.) Therefore, the Court relies on the facts alleged in the pleadings, as well as the affidavits submitted in support of the memoranda.

Department of Fire and Emergency Medical Services (the "Fire Department"). (*Id.* ¶¶ 3–4; Babauta Answer ¶¶ 3–4, ECF No. 6; Norita Answer ¶¶ 3–4, ECF No. 8.) On November 3, 2017, Proper Grand CNMI LLC ("Proper Grand") agreed to pay Double A $410,150 to install fire sprinklers in a building complex it owned. (Compl. ¶¶ 5–6.) Between December 2017 and January 2018, Thomas Salas, a business consultant for Double A, joined by Double A's Project Manager Antonie S. Santos (Santos Decl. ¶ 2, ECF 25-3) repeatedly met with Babauta to obtain an installation permit. (Salas Decl. ¶¶ 1–3, ECF No. 25-2.) At the initial meeting, Babauta informed Salas that only contractors on an approved list could receive permits. (*Id.* ¶ 3). Salas responded that, if that was the case, Double A would apply to be on the list. (*Id.*) Babauta then instructed Santos to bring him Double A's credentials. (*Id.*) Salas returned with various certifications and other documents supporting Double A's application. (*Id.* ¶ 4.) Babauta glanced at the papers and said he would look into it. (*Id.*) When Salas came a third time to check on the status of Double A's application, Babauta told him that Double A would not receive a permit for the Proper Grand project or any other in the future. (*Id.* ¶ 5.) Babauta added that the Fire Department had discovered a defect in a fire alarm Double A previously installed on a different project, and that he had confirmed with Commissioner Norita the decision never to issue Double A any permits. (*Id.*)

Salas next went to Norita directly. (*Id.* ¶ 6.) Norita stated that he would follow Babauta's decision and that Double A would not receive any future permits due to the prior installation error. (*Id.*) The complaint further alleges that Babauta and Norita offered as an alternate justification for denying the permit that Double A failed an oral test imposed on the spot, although Salas's declaration does not mention this test. (Compl. ¶ 13.)

Steven Liu, a Proper Grand representative, informed Salas that Babauta told him Double A had no business installing sprinklers because it was not on the approved list and did not have a

permit. (Salas Decl. ¶ 7.) Consequently, Proper Grand hired a substitute contractor and Double A lost the $410,150 deal. (Compl. ¶¶ 15–16.) In addition, the owner of a nearby hotel notified Double A that the Fire Department advised him Double A could not do any installation work for him. (Santos Decl. ¶ 4, ECF No. 25-3.) Were it not for that advice, the hotel owner would have hired Double A. (*Id.*)

On March 22, 2019, Double A brought this lawsuit asserting two causes of action under 42 U.S.C. § 1983. First, Double A claims that Defendants, acting under color of state law, deprived it of a property interest—the installation permit[3]—without due process of law. (Compl. ¶¶ 18–24.) Second, Double A also claims deprivation of a liberty interest—the freedom to perform lawful work for hire—again under color of state law and without due process. (*Id.* ¶¶ 25–31.)

## II. Legal Standard

*1. Summary Judgment*

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Id.* When considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Instead, the Court must draw all inferences in the light most favorable to the nonmoving party.

---

[3] Although the complaint does not specify that Double A's property interest was the installation permit, but rather its contractual relation with Proper Grand (Complaint ¶19), Double A clarified at the November 21 hearing that the permit is the only property interest involved in this case.

3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

   2. Qualified Immunity

   Qualified immunity protects an official who "reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." *Hunt v. Cnty. of Orange,* 672 F.3d 606, 615–16 (9th Cir. 2012) (quoting *Greene v. Camreta,* 588 F.3d 1011, 1031 (9th Cir. 2009)). Assessing whether an official is entitled to immunity is a two-prong inquiry. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Under the first prong, the Court asks whether the officer's conduct violated a constitutional right. *Id.* Under the second prong, the Court examines whether the right was clearly established. *Id.* The Court may examine either prong first and "may grant qualified immunity on the ground that a purported right was not clearly established by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted).

   To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "Whether the law was clearly established is an objective standard; the defendant's subjective understanding of the constitutionality of his or her conduct is irrelevant." *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011) (internal quotation marks omitted). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks omitted).

   3. Due Process

   The Fourteenth Amendment states "[n]o state shall . . . deprive any person of life, liberty,

4

or property, without due process of law." U.S. Const. amend. XIV, § 1.[4] To assert a procedural due process claim, "the plaintiff must establish the existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3) lack of process.'" *Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 983 (9th Cir. 2011) (quoting *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993)). Absent "extraordinary situations," due process requires at least a hearing before the government deprives someone of a protected interest. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 570 n.7 (1972) (internal quotation marks omitted).

### III. Discussion

Due process guarantees "apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Roth*, 408 U.S. at 569. Therefore, "[t]o state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014). The Court thus begins by asking whether the installation permit created liberty and property interests protected by the Due Process Clause, which would require Defendants to give Double A due process before denying the permit.

*1. Existence of Double A's Liberty Interest*

In its second cause of action, Double A asserts it has a liberty interest in the ability to contract freely with willing businesses and individuals to perform lawful work for hire, and that its exclusion from the list of authorized contractors has deprived it of its liberty interest without due process of law. The Due Process Clause protects a person's liberty "to contract, to engage in

---

[4] Section 1 of the Fourteenth Amendment applies within the Commonwealth of the Northern Mariana Islands. Pub. L. No. 94-241, 90 Stat. 263 (1976), codified at 48 U.S.C. § 1801.

5

any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Roth*, 408 U.S. at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). Although the Due Process Clause does not confer an absolute right to engage in any occupation, it does compel the state to give procedural due process before altering or extinguishing a previously-existing right to engage in a lawful occupation. *Paul v. Davis*, 424 U.S. 693, 711 (1976). It is the "alteration, officially removing the interest from the recognition and protection previously afforded" that triggers the "procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment." *Id.*

"Although the precise contours of that liberty interest remain largely undefined . . . the line of authorities establishing the liberty interest 'all dealt with a complete prohibition of the right to engage in a calling,' and not merely a 'brief interruption' in one's ability to pursue an occupation or profession." *Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999) (quoting *Conn v. Gabbert,* 526 U.S. 286, 292 (1999)). In *Dittman*, state officials notified an acupuncturist that, under a new law, his professional license would not be renewed unless he disclosed his social security number. *Id.* at 1024. The acupuncturist sued, arguing that the disclosure requirement deprived him of a liberty interest without due process. *Id.* In analyzing this claim, the Ninth Circuit held that, because state law required a license in order to practice acupuncture, withholding the license imposed "the type of 'complete prohibition' on entry into a profession that implicates a person's liberty interest in pursuing an occupation or profession of her own choice." *Id.* at 1029. *See also Jelahej v. Miller*, No. CV 07-8374 PSG(SSX), 2008 WL 4501920, at *5 (C.D. Cal. Oct. 6, 2008) ("A person may not work as a contractor in the state of California without a license. . . . Thus, this

6

requirement constitutes a complete prohibition on entry into a profession that implicates a person's liberty interest in pursuing an occupation or profession of her own choice.") (internal quotation marks omitted).

In their briefs, the parties dispute whether Double A was prohibited from installing a fire sprinkler system without first obtaining a permit. The governing law in the CNMI is the International Fire Code. 72 N. Mar. I. Admin. Code § 72-10-855 (2018). The code in turn states, "A construction permit is required for installation of or modification to an automatic fire-extinguishing system." Int'l Fire Code § 105.7.1. That language is unambiguous. Moreover, Norita's counsel conceded at the November 21 hearing that the fire code did indeed require Double A to obtain a permit before installing a sprinkler system. In other words, withholding the permit served as a complete prohibition to Double A's occupation of installing fire sprinklers. Double A therefore had a valid liberty interest in securing the permit.

Defendants, recharacterizing Double A's alleged liberty interest as the freedom to contract with Proper Grand, argue that there are no "protected liberty interests in the ability to contract." (ECF No. 26 at 4.) To support this position, they quote the Supreme Court's decision in *West Coast Hotel Co. v. Parrish*: "There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards." 300 U.S. 379, 392 (1937) (quoting *Chicago, B. & Q.R. Co. v. McGuire*, 219 U.S. 549, 567 (1911)). As the Court will explain, Defendants' reliance on *West Coast Hotel* is misguided. They have, it seems, fallen into the trap of confusing procedural with substantive due process.

The Due Process Clause guarantees both substantive and procedural protections. *Zinermon*

*v. Burch*, 494 U.S. 113, 125 (1990). "Although a literal reading of the Clause might suggest that it governs only the procedures by which a State may deprive persons of liberty . . . the Clause has been understood to contain a substantive component as well, one barring certain government actions regardless of the fairness of the procedures used to implement them." *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 846 (1992) (internal quotation marks omitted). Laws violate substantive due process "because of the substantive content of the rule the government is applying, and regardless of the procedures by which the rule is applied to particular persons." Laurence H. Tribe, *Taking Text and Structure Seriously: Reflections on Free-Form Method in Constitutional Interpretation*, 108 Harv. L. Rev. 1221, 1297 n.247 (1995). Procedural due process is essentially the inverse. It addresses only the procedure by which a rule is implemented, rather than the consequences of the rule. *Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 66 (9th Cir. 1994). "It is well-established that the procedural and substantive requirements of the due process clause are analytically distinct—a procedurally flawed policy can pass substantive muster, and, conversely, a procedurally flawless policy can be substantively unacceptable." *Id*.

"Generally speaking, substantive due process protects an individual's fundamental rights to liberty and bodily autonomy." *C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016). *West Coast Hotel* involved only substantive due process. 300 U.S. at 391. The appellants challenged a state minimum wage law, not because of the procedures used to enforce it, but because the law itself allegedly violated a fundamental right to freedom of contract. *Id.* The Supreme Court rejected this argument, holding that there is no fundamental right to contract for any sum of wages. *West Coast Hotel*, 300 U.S. at 392. Double A, by contrast, brought claims based entirely on *procedural* due

8

process.[5] Double A does not argue that installing a fire sprinkler system is a fundamental right that Defendants could not deny to anyone under any circumstance. Rather, Double A only claims Defendants violated the Due Process Clause in the manner by which they denied its application. Because Double A challenges only the procedure Defendants used, *West Coast Hotel* is inapplicable. Indeed, the Supreme Court explicitly identified the freedoms to contract and pursue an occupation as liberty interests that states cannot take away without procedural due process. *Roth*, 408 U.S. at 572. Therefore, while these are not fundamental rights that implicate substantive due process, they are nonetheless strong-enough to mandate procedural due process before government deprivation.

Defendants' next argument is equally problematic. They contend that the Due Process Clause protects only the liberty interests of natural persons (*i.e.*, human beings) rather than corporations like Double A. (ECF No. 26 at 4–5.) In support, Defendants quote a long-abandoned, 113-year-old Supreme Court opinion: "The liberty referred to in [the Fourteenth] Amendment is the liberty of natural, not artificial, persons." *Nw. Nat. Life Ins. Co. v. Riggs*, 203 U.S. 243, 255 (1906). What Defendants somehow missed is that three decades later the Supreme Court reversed course and held that the Fourteenth Amendment does protect the liberty interests of corporations. *Grosjean v. American Press Co.*, 297 U.S. 233, 244 (1936). *See also First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 780 (1978) ("Freedom of speech and the other freedoms encompassed by the First Amendment always have been viewed as fundamental components of the liberty safeguarded by the Due Process Clause, and the Court has not identified a separate source for the right when it has been asserted by corporations.") (citations omitted). More recently, the Ninth Circuit recognized that "[a] corporation may contract and may engage in the common occupations

---

[5] The complaint can only reasonably be read to accuse Defendants of violating procedural due process, and Double A confirmed this at the November 21 hearing.

9

of life, and should be afforded no lesser protections under the Constitution than an individual to engage in such pursuits." *Wedges/Ledges*,[6] 24 F.3d at 65 n.4 (quoting *Old Dominion Dairy Products Inc. v. Sec'y of Defense,* 631 F.2d 953, 962 (D.C. Cir. 1980)). These cases clearly establish that Double A had a valid liberty interest in pursuing its occupation of installing fire sprinklers, which it could not do without the permit that only a fire official such as Defendants Babauta and Norita could grant.

2. *Existence of a Property Interest*

"A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Wedges/Ledges*, 24 F.3d at 62 (quoting *Roth*, 408 U.S. at 577). "Supreme Court 'cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.'" *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (quoting *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005)). "Instead, 'a reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms.'" *Id.* (quoting *Wedges/Ledges*, 24 F.3d at 62); *see also Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984) ("A constitutionally protected [property] interest has been created only if the procedural requirements are intended to be a significant substantive restriction on the [state actor's] decision making.") (internal quotation marks omitted).

In *Wedges/Ledges*, the Ninth Circuit addressed whether a city code requiring a license to install coin machines created a property interest in the license. 24 F.3d at 63. The code stated:

> Only coin machines which are approved by the City Treasurer as games of skill may be operated as an amusement within the City . . . The City Treasurer shall

---

[6] Paradoxically, Defendants cite to this case while simultaneously arguing that Double A did not identify any Ninth Circuit precedent recognizing the liberty interests of corporations. (Reply, ECF No. 26 at 4.).

>make a determination as to whether or not a proffered machine qualifies as a game of skill based upon an evaluation of the machine and recommendation by the police department and other relevant information.

*Id.* The Ninth Circuit held that the code's use of the imperative "shall" bestowed a property interest in the license, because it denied the treasurer any discretion to deny a license. *Id.* The good-faith duty to determine whether a coin machine counted as a game of skill was a standard to follow, rather than a grant of discretion. *Id.*

The fire code employs similar language. It mandates: "If the fire code official is satisfied that the proposed work or operation conforms to the requirements of this code and laws and ordinances applicable thereto, the fire code official *shall* issue a permit as soon as practicable." Int'l Fire Code § 105.2.4 (emphasis added). Defendants counter that the fire official does enjoy discretion when reviewing permit applications because he must grant the application only if "satisfied" that it conforms to the code. (Reply at 2–3.) But the Ninth Circuit rejected a similar argument in *Wedges/Ledges*. Ensuring that an application conforms with the code is a standard for the official to follow, not an award of discretion. The code's use of the imperative, combined with a clear standard for the official to follow, amounts to a statutory entitlement. Therefore, Double A had a valid property interest in obtaining the installation permit.

3. *Constitutionally-mandated Procedure*

Because Defendants deprived Double A of a liberty and property interest, the Court must next determine whether the procedures used were constitutionally adequate. *See Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 983 (9th Cir. 1998) ("[O]nce a court determines that a protected property [or liberty] interest has been taken, the question remains what process is due.") (internal quotation marks omitted). "Due process requires notice and an opportunity to be heard." *Carpenter v. Mineta*, 432 F.3d 1029, 1036 (9th Cir. 2005). "The Supreme Court 'usually has held that the Constitution requires some kind of a hearing *before* the State

11

deprives a person of liberty or property.'" *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015) (quoting *Zinermon v. Burch,* 494 U.S. 113, 127 (1990)).

Viewing the disputed facts most favorably to Double A, as the Court must do on summary judgment, Defendants did not give even minimal due process. At the very least, they could not deny the permit without notifying Double A of their reasons and offering a meaningful opportunity to respond. The fire code recognizes this, stating: "If the application or the construction documents do not conform to the requirements of pertinent laws, the fire code official shall reject such application in writing, stating the reasons therefor." Int'l Fire Code § 105.2.4. Yet, as Double A's business consultant Salas tells it, there was no written justification or meaningful opportunity to be heard. (Salas Decl., ECF No. 25-2 ¶¶ 5-6.) Instead, Defendants rebuffed Double A's inquiries and gave only a terse, verbal rationale that they denied the permit due to a past installation error involving "speaker wire." (*Id*.) That explanation was inadequate because it did not include any corresponding legal basis for denying the application on those grounds. Defendants did not inform Double A of any section of fire code or other law empowering them to consider past installation errors when reviewing an application. And lacking that information, Double A faced a significant obstacle when responding to them. *See Gete v. I.N.S.*, 121 F.3d 1285, 1298 (9th Cir. 1997) (holding that, under the Due Process Clause, the government could not seize property without "giving [] notice of the specific statutory provision allegedly violated"); *see also Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986–87 (9th Cir. 2012) ("the opportunity to guess at the factual and legal bases for a government action does not substitute for actual notice").

Defendants have each submitted affidavits presenting their version of the facts. (Babauta Aff., ECF No. 22-2; Norita Aff., ECF No. 20-2.) Both claim that the list Double A refers to is merely a record of who has obtained permits in the past and does not bar anyone else from a

12

receiving one. (Norita Aff. ¶¶ 16–17; Babauta Aff. ¶ 14–15.) Norita further alleges that he never reviewed or denied Double A's application. (Norita Aff. ¶¶ 13–14.) Babauta's affidavit, by contrast, refutes Double A's allegations on the grounds that he does not have the final authority to grant a permit, and that he was not at work in November 2017 when the alleged encounters occurred. According to the complaint, it was on or about November 3, 2017 when Double A reached an agreement with Proper Grand to perform the fire sprinkler system installation work. Declarations from Double A's Project Manager Antonie Santos (ECF No. 25-3) and business consultant Thomas S. Salas state that the application and follow-up meetings began in December 2017 and continued into January 2018. Yet, Babauta only claims that, due to a leave from work, he never reviewed any applications submitted the month before. (Babauta Aff. ¶ 9–13.) Regardless, even if both affidavits squarely denied every word of Salas's declaration, that would merely create a factual issue for trial. It is not the role of the Court on summary judgment to weigh competing affidavits.

To the extent there are any holes in the evidentiary record, discovery is not over. The Court allowed Defendants to file qualified immunity motions before the discovery cutoff to reduce the burden of litigation in the event their motions were granted. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (directing district courts to decide qualified immunity at the start of a case "so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings"). Thus, the issue at this stage is not whether Double A has enough evidence to potentially win at trial. Instead, the only question is whether Double A alleged a violation of a clearly established constitution right. Any factual arguments must wait until the close of discovery when the record is fleshed out.

As to the first prong of a qualified immunity analysis, the facts contained in the complaint

and declarations show that Defendants deprived Double A of a liberty and property interest without procedural due process. And as to the second prong, the Court finds that the parameters of Double A's due process rights were clearly established by December 2017, when the alleged events took place. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). This does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* In this case, the Ninth Circuit's existing precedents—particularly *Wedges/Ledges*, *Dittman*, and *Gete*—address all of Defendants' legal arguments. There is little doubt that Defendants' alleged actions, if true, violated the Due Process Clause. Accordingly, both prongs are satisfied, and Defendants' motion for summary judgment based on qualified immunity fails.

## IV.    Conclusion

For the foregoing reasons, Defendants' motions for summary judgment (ECF Nos. 20, 22) are DENIED.

IT IS SO ORDERED this 3rd day of December, 2019.

                                                                   RAMONA V. MANGLONA
                                                                   Chief Judge