F I L E D
 Clerk
 District Court
NOV 02 2020
for the Northern Mariana Islands
By_____
         (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

DOUBLE A CORPORATION,

    Plaintiff,

v.

ANTHONY BABAUTA and CLAUDIO K. NORITA,

    Defendants.

Case No. 1:19-cv-00005

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. Introduction

Akira Kurosawa's 1950 film *Rashomon* famously reenacts four competing versions of the same scene—each time from a different narrator's point of view. In the end, with every character recounting the incident in the most self-serving light possible, the audience is left to wonder what really happened. Seventy years after *Rashomon* first premiered, the parties to this lawsuit prove how life imitates art.

The breadth of their finger-pointing, contradictions, and denial is one for the ages. And nestled precariously, in the eye of it all, is Plaintiff Double A Corporation's motion for partial summary judgment. (ECF No. 44.) Perhaps unsurprisingly, the Court must deny that motion. There are only two ways to resolve the issues in this case: either (1) a trial, or (2) a very patient mediator.

## II. Factual Background

*1.  Frame Story*

The following facts are derived from the depositions and affidavits of the individuals involved. It begins with Defendant Claudio Norita's swearing in as Commissioner of the CNMI

Department of Fire and Emergency Medical Services (the "Fire Department") in March 2015.[1] All commercial buildings in the CNMI require fire safety systems, and one duty of the Fire Department is to issue permits to the contractors hired to install them.[2] As the man in charge, Norita circulated a memo declaring himself Fire Marshal and therefore the only person with authority to grant these permits.[3] At the same time, Norita had no idea how to review permit applications, and he did not endeavor to learn.[4] Instead, Norita completely delegated the job of reviewing applications to his codefendant Anthony Babauta, a Fire Inspector at the Department.[5] The two worked out a system where Babauta "recommended" what action to take on each application, and Norita rubber stamped those recommendations without any independent review.[6]

Theoretically, Babauta had zero discretion when deciding whether to recommend approving a permit. Anyone who submits the required documents, fills out a standard form, and pays a $150 fee is supposed to receive one automatically.[7] Babauta's only job as the reviewing officer was to check that the applicant submitted everything required.[8] Theory, of course, does not always conform with reality; and in this case, someone gave the application procedure a life of its own.

Double A's unsuccessful toil to obtain a permit illustrates just how arbitrary the procedure became. In November 2017 Double A, as a local construction contractor, accepted a $410,150 job to install fire sprinklers in a new building complex owned by Proper Grand CNMI LLC.[9] Because the contract was contingent on Double A receiving a permit from the Fire Department, its

---

[1] Norita Aff. ¶ 2 (ECF No. 20-2).
[2] Babauta Dep. 15:1–15 (ECF No. 46-3 at 2).
[3] Norita Dep. 30:13–31:14 (ECF No. 46-4 at 2–3).
[4] *Id.* 40:3–11 (ECF No. 46-4 at 8).
[5] *Id.* 33:3–34:2 (ECF No. 46-4 at 5–6).
[6] *Id.* 31:19–22, 41:3–23, 42:8–43:24 (ECF No. 3, 9–11).
[7] Babauta Dep. 16:22–18:4 (ECF No. 46-3 at 3–5); Iginoef Dep. at 14 (ECF No. 46-5 at 3).
[8] Babauta Dep. 17:20–22 (ECF No. 46-3 at 4).
[9] Compl. ¶¶ 5–6 (ECF No. 1 at 2).

representatives immediately set out to obtain one. But three months and many visits to the Fire Department later, the permit was still nowhere in sight. Not only had the Fire Department apparently refused the issue a permit to Double A, it also refused to explain why or acknowledge anything in writing. As a result, Double A eventually lost out on the contract, much to its ire.[10]

That part is essentially undisputed. No one seriously questions that, during the period in question, the Fire Department's permitting process was a textbook example of how not to run a bureaucracy. And the Court has already held that what happened was a violation of Double A's due process rights.

Instead, the real mystery of this case has always been: who at the Fire Department was responsible? Each party tells it differently. On the one hand, Double A blames both Babauta and Norita. On the other hand, Babauta and Norita each blames the other. Adding to the intrigue, there is witness testimony backing parts of every story; although, notably, most witnesses were not exactly detached from the drama. Double A's only witnesses are its two representatives who applied for the permit: project manager Antonie Santos and business consultant Thomas Salas. Similarly, Norita's main witness is himself, and likewise for Babauta. Thus, the inconsistencies obviously stem from the fact that some witnesses are not being entirely truthful.

The only other witness in this case, at least to the Court's knowledge, is Romeo Iginoef, another Fire Inspector at the Department. Iginoef's testimony supports Babauta and Double A to the extent that both are blaming Norita. Conversely, Iginoef and Norita's testimony directly conflict with each other. As for whether Babauta is also at fault, Iginoef has no insight to give.

At this point, the Court will now summarize the parties' differing renditions of what happened at the Fire Department.

---

[10] Salas Decl. ¶ 7 (ECF No. 25-2 at 2–3).

2. *Double A's Narrative*

Having just secured the construction job, Salas and Santos[11] went to the Fire Department in November and December 2017 to obtain Double A's permit.[12] During these visits, Babauta and someone else on his staff informed the two that Double A could not file a permit application, or pay the $150 fee, without prior approval.[13] To receive that approval, they were told to come back with a set of credentials for Babauta to review.[14]

Salas and Santos returned to the Fire Department on December 14 and handed Babauta the credentials he wanted.[15] Babauta glanced at the documents and said he would look into it.[16] After several weeks without a response, Salas and Santos returned on January 4, 2018.[17] Babauta met with them and announced that he would never allow Double A to apply for a permit.[18] When they asked why, Babauta's only explanation was that one of Double A's past installation jobs, on an unrelated project, contained a "speaker wire" defect.[19]

Salas next brought the matter directly to Norita's attention.[20] Norita, however, stated that he would follow Babauta's decision not to allow a permit.[21] Afterwards, a Proper Grand representative told Santos that the Fire Department informed Proper Grand that Double A could not do any installation work because it lacked a permit.[22] A potential client for another job also

---

[11] Santos accompanied Salas at least some of the time. But how many visits Salas made in total, and what fraction of those Salas came for, is unclear.
[12] Salas Dep. 12:16–18, 39:1–11 (ECF No. 50-5 at 1, 5).
[13] Salas Dep. 12:16–21, 13:17–21, 18:1–8 (ECF No. 50-5 at 1, 2, 4); Salas Decl. ¶¶ 2–3 (ECF No. 25-2 at 1–2); Iginoef Dep. 13–15 (ECF No. 46-5 at 2–4).
[14] Salas Decl. ¶ 3 (ECF No. 25-2 at 2); Salas Dep. 18:1–8 (ECF No. 50-5 at 4).
[15] Salas Decl. ¶¶ 2, 4 (ECF No 25-2. 1–2); Santos Decl. ¶ 3 (ECF No. 25-3 at 1–2).
[16] Salas Decl. ¶ 4 (ECF No. 25-2 at 2); Salas Dep. 18:13–15 (ECF No. 50-5 at 4).
[17] Salas Decl. ¶¶ 2, 5 (ECF No. 25-2 at 1–2.)
[18] *Id.* ¶ 5.
[19] *Id.*
[20] *Id.* ¶ 6.
[21] *Id.*
[22] Santos Decl. ¶ 4 (ECF No. 25-3 at 2).

alerted Santos that the Fire Department told him the same thing.[23]

3. *Babauta's Competing Narrative*

Here is how Babauta tells it. The Fire Department has a practice of not allowing contractors to file permit applications, or pay the $150 fee, until after a Department official first approves the person's credentials.[24] Babauta was off island when Salas and Santos went to the Fire Department in November 2017.[25] He did not return until the first week of December.[26] While Babauta was away, Iginoef received a file of Double A's credentials and, without reviewing it, gave it to Norita, who personally made the decision to disapprove Double A's permit application.[27] By the time Salas and Santos showed up on December 14 to give Babauta a copy of Double A's credentials, Norita's decision was already made. During the December 14 meeting, Babauta set the credentials Salas handed him on his desk and said he would get back to them about the permit application.[28] When Salas and Santos returned on January 4, Babauta had not yet looked at the credentials.[29] Babauta then told Salas and Santos he would check with Norita to see if he could help them.[30]

Babauta did ultimately speak with Norita about Double A's request for a permit.[31] But Norita simply informed Babauta, without elaboration, that Double A would not receive a permit.[32] Babauta did not ask Norita for his reasoning[33] and decided against notifying Double A about his conversation with Norita.[34] Moreover, Babauta claims that he never had the opportunity to personally review Double A's credentials because the folder was lost when Typhoon Yutu

---

[23] *Id.*
[24] Babauta Dep. 15:21–18:5 (ECF No. 46-3 at 2–5).
[25] *Id.* 36:6–9 (ECF No. 46-3 at 17).
[26] *Id.* 38:9–13 (ECF No. 46-3 at 19).
[27] *Id.* 39:1–8 (ECF No. 46-3 at 20); Iginoef Dep. at 23–24 (ECF No. 46-5 at 9–10).
[28] Babauta Dep. 34:6–12, 35:5–10 (ECF No. 46-3 at 15–16).
[29] *Id.* 35:17–36:5 (ECF No. 46-3 at 16–17).
[30] *Id.* 37:12–21 (ECF No. 46-3 at 18.)
[31] *Id.* 41:20–42:1 (ECF No. 46-3 at 22–23).
[32] *Id.* 42:5–10 (ECF No. 46-3 at 23).
[33] *Id.* 42:9–10 (ECF No. 46-3 at 23).
[34] *Id.* 42:20–43:3 (ECF No. 46-3 at 42–43).

5

destroyed his office—ten months later.[35]

4. *Iginoef's Narrative*

Iginoef replaced Babauta as office supervisor during Babauta's absence in November 2017.[36] Acting in that role, Iginoef met with Salas and Santos during their initial trips to the Fire Department.[37] Salas gave Iginoef a folder of Double A's credentials, which Iginoef passed on to Norita.[38] Norita—who did not know the requirements for approving a permit—verbally told Iginoef that the permit was denied.[39] Norita did not explain his reason for denying the permit, and Iginoef never asked.[40] Iginoef then notified Double A that the permit was denied.[41] When Babauta returned in December, Iginoef filled Babauta in on everything.[42]

5. *Norita's Competing Narrative*

According to Norita, he never reviewed or denied any permit application from Double A.[43] Babauta was the one who reviewed Double A's permit application, and Norita did not learn what happened until well after the fact.[44] In other words, Norita pleads total ignorance.

### III.    Procedural History

In March 2019, Double A sued Babauta and Norita under 42 U.S.C. § 1983, alleging that they rejected its permit application in a way that violated due process.[45] Early in the case, Babauta and Norita each filed a motion for summary judgment based on qualified immunity.[46] The Court denied those motions.

---

[35] *Id.* 35:25–36:5 (ECF No. 46-3 at 16-17).
[36] Iginoef Dep. at 20–22 (ECF No. 46-5 at 6–8).
[37] *Id.* at 22–23 (ECF No. 46-5 at 8–9).
[38] *Id.* at 23 (ECF No. 46-5 at 9).
[39] *Id.* at 24 (ECF No. 46-5 at 10).
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] Norita Aff. ¶¶ 12–14 (ECF No. 20-2 at 2).
[44] *Id.* ¶ 12; Norita Dep. 50:20–25 (ECF No. 46-4 at 13).
[45] Compl. ¶¶ 18–31 (ECF No. 1 at 4–6).
[46] Norita's motion for summary judgment (ECF No. 20); Babauta's motion for summary judgment (ECF No. 22).

As the Court explained, Double A successfully alleged that both defendants violated its right to due process.[47] In particular, this Court concluded that Double A had a liberty and property interest in the permit, without which its construction business lost clients.[48] Therefore, before refusing Double A's request for a permit, due process required the Fire Department to first disclose a legal basis for its decision and then offer Double A an opportunity to respond.[49] The Fire Department did neither, and according to Double A, Babauta and Norita were both responsible. That meant neither was entitled to summary judgment.

Following the Court's ruling, the case proceeded to discovery, which concluded on July 20, 2020.[50] Now before the Court is another summary judgment motion, this time from Double A.[51] The motion is a relatively limited one. Double A only asks for partial summary judgment on the sole issue of Babauta's liability. Whether Norita is also liable, and what damages to award, are issues Double A rightly leaves for trial.

### IV.   Legal Standard

A civil action goes to trial whenever it turns on an evidentiary dispute. But if all the evidence supports only one outcome, then the Court shall grant summary judgment without need for a trial.[52] The purpose of summary judgment is merely to screen "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[53] In making that determination, the Court accepts as credible any evidence, including witness testimony, from a party opposing summary judgment.[54] It is for the

---

[47] *Double A Corp. v. Babauta*, 2019 WL 6499216, at *7 (D. N. Mar. I. Dec. 3, 2019).
[48] *Id.* at *3–6.
[49] *Id.* at *6–7.
[50] Fifth Amended Scheduling Order at 2 (ECF No. 56).
[51] The Court took the motion under advisement after a hearing on October 22, 2020.
[52] Fed. R. Civ. P. 56(a).
[53] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).
[54] *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007).

jury to decide who to believe, and who not to believe, in rendering its verdict.[55]

### V. Discussion

All three parties have at least one witness endorsing their version of what happened. Consequently, the Court must always believe the narrative of the party opposing summary judgment. During the last summary judgment round, Double A's narrative took center stage. This time, by contrast, Babauta's narrative controls.

Double A contends that Babauta is liable even the way he describes what happened. Babauta, in opposition, presents an assortment of *mostly* meritless arguments against liability. He does point to one thing that warrants denying summary judgment. But before going there, it is worth touching on Babauta's less meritorious claims.

First, Babauta suggests that Double A's inability to obtain a permit did not stop it from doing the construction job.[56] His reasoning: Double A should have subcontracted for someone who already had a permit. That is ridiculous. The contract did not allow for it. Furthermore, Double A did not want to work for a competitor. What it wanted was to do the job alone.

Babauta next argues that Double A abandoned the application process by not pursuing a permit past January.[57] "Abandoned" is a far stretch. Double A only relented after being stonewalled for three months, which caused it to lose out on the contract.[58] It is more accurate to say that Double A was detrimentally stripped of its primary purpose for a permit.

Lastly, Babauta points out that the Fire Department has no written record of Double A applying for a permit, as though that somehow helps his case.[59] It does not. Of course there is no

---

[55] *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1042–43 (9th Cir. 2011).
[56] Opposition at 14–17 (ECF No. 50).
[57] *Id.* at 12–14.
[58] The Court is only relying on the undisputed facts here. It did not even factor Double A's allegation that the Fire Department told its clients that it could not perform on the contract.
[59] *Id.* at 8–11.

8

application on file. The whole cause of this lawsuit is the Fire Department's refusal to let Double A submit one. Someone at the Department imposed an arbitrary procedure where contractors had to verbally apply for permission to make a written application. And at this initial step, nothing was documented on paper. As the Court said earlier: a textbook example of how not to run a bureaucracy.

Having gone over Babauta's bad arguments, the Court will now turn to his one good argument. Babauta contends that, accepting his version of the facts as true, his meetings with Double A were a mere courtesy beyond his official duties.[60] Here, Babauta is onto something.

"A § 1983 claim requires two essential elements: (1) the conduct that harms the plaintiff must be committed under color of state law (*i.e.,* state action), and (2) the conduct must deprive the plaintiff of a constitutional right."[61] State actors might violate a person's constitutional rights either of two ways: (1) committing an affirmative act the law prohibits, or (2) failing to act when the law requires it.[62] This case involves the latter scenario: Double A accuses Babauta of failing to act on its permit request when required. To hold a state official liable under § 1983 for failing to act, a plaintiff must prove that the official's inaction directly caused the plaintiff's injury.[63] "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."

Critically, there is no causation if the official lacked authority to do the thing in question. For example, in *Brown v. California Dep't of Corr.*, a former inmate sued her prison warden for

---

[60] *Id.* at 11–12.
[61] *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987).
[62] *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).
[63] *Id.*

failing to release her on time.[64] The Ninth Circuit recognized that state officials should have released Brown sooner than they did.[65] However, it also held that the warden was not liable because she "lacked independent authority to make prison release decisions."[66] [67]

In this case, Babauta claims that, by the time he first met with Salas and Santos, Norita had already rejected Double A's request for a permit. And as Norita's subordinate, Babauta lacked authority to override that decision.

Double A pushes back here. It argues that, even accepting Babauta's narrative as true, Salas and Santos went to Babauta to make a renewed application, not to complain about the past application. Therefore, Babauta had a duty to act on this second application. Undoubtedly, Double A offers a more plausible interpretation of what happened. Nevertheless, because this case is at the summary judgment stage, the Court will give Babauta the benefit of the doubt. It is possible that Double A's meetings with Babauta were merely to follow up on the same application Norita already denied, rather than to make a renewed application. And if that is truly what happened, then Babauta might not have had an official obligation to reevaluate the already-denied application. Therefore, Babauta raises a genuine dispute for trial. A jury that believes his account might hold only Norita liable.

To be sure, Babauta could have done more to help Double A. For example, bothering to ask Norita why Double A did not receive a permit might have averted everything that happened next, including this lawsuit. And if Norita had explained his reasons in writing, as required by the Fire Code, then Double A could have taken action to provide the missing information.

---

[64] 554 F.3d 747, 749 (9th Cir. 2009).
[65] *Id.*
[66] *Id.* at 752.
[67] *See also Warner v. Curry*, No. CV 17-104-M-DLC-JCL, 2018 WL 4375199, at *5 (D. Mont. Feb. 7, 2018) (finding that the defendants were not liable for failing to provide pain medication, because they lacked authority to write a prescription), report and recommendation adopted by 2018 WL 2455929 (D. Mont. June 1, 2018).

10

Nevertheless, failing to rectify an injury is not the same thing as causing one. The legal inquiry is not whether Babauta was inconsiderate. Instead, it is whether Babauta had an official duty to review Double A's credentials—the same ones previously tendered to Iginoef and rejected by Norita—to determine that the credentials were valid, and then persuade Norita to change his mind. The existence of that duty is not indisputably proven. And without it, Babauta is not, legally speaking, liable for his failure to intervene.

Double A offers an alternate narrative that might prevail at trial. But considering how many facts are disputed, no one can win on summary judgment.

## VI.   Conclusion

This case is a real whodunnit. In Double A's narrative, Babauta and Norita both prevented it from filing and obtaining a permit without any reasonable and proper explanation. But in Babauta's narrative, only Norita was responsible. It is up to a jury to decide who to believe. In the meantime, because the Court cannot usurp the jury's role as factfinder, Double A's motion for partial summary judgment is DENIED.

IT IS SO ORDERED this 2nd day of November, 2020.

RAMONA V. MANGLONA
Chief Judge